IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:09CV135-GCM

| | |
|---|---|
| DIAGNOSTIC DEVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DOCTOR DIABETIC ) | |
| SUPPLY, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court upon the Defendant's Motion to dismiss Plaintiff's Second Amended Complaint, filed July 13, 2009; Plaintiff's Brief in opposition to Defendant's Motion to Dismiss, filed July 29, 2009; and Defendant's Reply in support of Defendant's Motion to Dismiss, filed August 10, 2009. For the reasons set forth below, Defendant's motion is GRANTED as to Plaintiff's claim for relief for libel per se, but DENIED as to all of Plaintiff's other claims.

## I. BACKGROUND

Plaintiff is in the business of selling diabetic supplies, including diabetic testing meters and strips, under the brand name "Prodigy" to distributors, who then sell the products to end users. Defendant is a distributor of diabetic supplies, to whom the Plaintiff claims to have sold over a million dollars worth of supplies between 2007 and 2009. This case stems from a shipment of diabetic supplies from the Plaintiff to the Defendant on January 8, 2009, which Plaintiff claims Defendant accepted and then refused to pay for pursuant to the terms of a contract between the parties. The Plaintiff alleges damages in the amount of $100,603.25 resulting from Defendant's refusal to pay. In the alternative to its

1

claim for breach of contract, the Plaintiff asserts a claim in quantum meruit, for those supplies delivered and accepted by the Defendant.

In addition, Plaintiff asserts causes of action for defamation, libel per se, unfair and deceptive trade practices under North Carolina statues, and unfair competition under North Carolina common law, based on allegations by the Plaintiff that the Defendant made misrepresentations to its customers regarding the availability of Plaintiff's product. Specifically, Plaintiff claims that Defendant made misrepresentations to its customers in letters dated March 26, 2009 and March 28, 2009, and through website content and telephone contact with customers, in which Defendant informed them that it would no longer carry Plaintiff's "Prodigy" diabetic supplies because the "manufacturer is discontinuing this model within the US markets." (Exhibits D &E to Second Amended Complaint) Plaintiff alleges Defendant knew this to be incorrect because Plaintiff had previously sent the Defendant a letter on February 5, 2009, informing the Defendant that the Plaintiff's product was not in short supply and that "it will continue to be manufactured by DDI."(Exhibit G to Second Amended Complaint)

## II. DISCUSSION

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1993) *citing* 5A C. Wright & A. Miller, Fed. Practice and Procedure § 1356 (1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007)) The facial plausibility standard requires "the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."

*Francis v. Giacomelli*, No. 08-1908 (4th Cir. Dec. 2, 2009) (quoting *Iqbal*, 129 S.Ct. at 1950). "The Supreme Court has held that a complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 9 (*quoting* Iqbal, 129 S.Ct. at 1949).

### B. Claims for Breach of Contract and Quantum Meruit

The elements of a breach of contract claim under North Carolina law are: (1) the existence of a valid contract between the parties; (2) breach of that contract; and (3) damages resulting from the breach. *Lee Cycle Center, Inc. v. Wilson Cycle Center, Inc.*, 545 S.E.2d 745, 751 (N.C. App. 2001). The Plaintiff has a valid claim for breach of contract because it has properly alleged facts, including a history of business transactions, and written records, between the parties that, taken as true, suggest the possible existence of a valid contract between the parties. Plaintiff also fulfills the pleading requirements of the second and third elements by claiming that the Defendant has refused to fully pay for goods properly delivered by the Plaintiff, therefore damaging Plaintiff to the extent of the unpaid balance. Based on these same facts, Plaintiff has properly alleged a claim for quantum meruit. Under North Carolina law, while a party may not recover under both a theory of breach of contract and quantum meruit, a party may plead quantum meruit in the alternative. *James River Equip., Inc. v. Mecklenburg Utilities, Inc.*, 634 S.E.2d 557, 560 (N.C. App. 2006).

### C. Claims for Defamation and Libel Per Se

To state a claim for defamation the Plaintiff must allege that: (1) the defendant caused injury to the plaintiff, (2) by making false, defamatory statements, (3) the statements were of, or concerning, the plaintiff, and (4) the statements were published to a third person. *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 897 (N.C. App. 2002). Here, the Plaintiff has alleged in its complaint that it was harmed by statements made by the Defendant to its customers containing misrepresentations regarding the

3

Plaintiff's product and business, the issue is whether the statements, viewed in a light most favorable to the Plaintiff, rise to the level of being "defamatory." North Carolina law recognizes two types of defamation torts, libel and slander. There are three categories of libel:

> (1) Publications which are obviously defamatory and which are termed libels per se; (2) publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not; and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances. This type of libel is termed libel per quod.
> *Ellis v. Northern Star Co.,* 326 N.C. 219, 223, 388 S.E.2d 127,130 (1990).

A publication is libel per se if, among other things, it "tends to impeach one in his trade or profession." *Id*. at 224. "'[F]alse words imputing to a merchant or business man conduct derogatory to his character and standing as a business man tending to prejudice him in his business are actionable, and words so uttered may be actionable per se.' The false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business." *Clark v. Brown*, 393 S.E.2d 134 (N.C. App. 1990) (quoting *Badame v. Lampke* 89 S.E.2d 466,468 (1955). Plaintiff bases its claims for libel per se on two letters sent by the Defendant to two of its customers, in which it falsely suggests that Plaintiff's product is in short supply and the manufacturer is discontinuing it in the US Market. (Exhibits D & E to Second Amended Complaint). In a business context, a statement that does not "assert any illegal or wrongful activity" by the plaintiff, generally does not rise to the level of defamation recognized under North Carolina law. *Nucor Corp. v. Prudential Equity Group, LLC*, 659 S.E.2d 483 (N.C. App. 2008). Here, the Defendant has made false statements regarding the availability of the Plaintiff's product, but has not impeached the Plaintiff's business reputation for legality or integrity. Therefore, even viewed in the light most favorable to the Plaintiff, these statements do not rise to the level of libel per se.

In the alternative, Plaintiff asserts a claim for defamation, in the forms of libel per quod and slander per quod, based on the letters, website content, and oral statements Plaintiff believes have been made by the Defendant to its customers. Under the per quod theory, "the publication must have been intended by the defendant to be defamatory and had to be understood as such by those to whom it was published… [f]or these reasons, both the innuendo and special damages must be proven." *Holleman v. Aiken*, 668 S.E.2d 579, 588 (N.C. App. 2008) (quoting *Raymond U v. Duke University*, 371 S.E.2d 701, 708 (N.C. App. 1988). In other words, "if the injurious nature of the spoken statement appears, not on its face as a matter of general acceptance, but only in consequence of extrinsic, explanatory facts showing its injurious effect… the injurious character of the words must be plead and proved, and in order to recover there must be allegation and proof of some special damage." *Badame* at 467.

The Plaintiff alleges in its complaint that Defendant's statements are injurious when considered in conjunction with other defamatory statements about the Plaintiff and its products made by competitors and a former manufacturer. Specifically, the Plaintiff cites an allegedly defamatory letter from the former manufacturer of its Prodigy brand products, which asserts that the Plaintiff "sells fake test strips to its customers." (Complaint, ¶ 67). Plaintiff also claims that it has special damages because the Defendant's statements caused its customers to no longer order and purchase Plaintiff's testing meters or strips, therefore damaging Plaintiff to the extent of its former average monthly sales to the Defendant in the amount of $98,743.32. These factual claims sufficiently fulfill Plaintiff's obligation under the special pleading requirements for defamation per quod because, taken as true, Plaintiff has alleged extrinsic circumstances that could suggest a plausible reason for a defamatory understanding by those customers that received the Defendant's statements, and specific damages that resulted from that harm.

5

**D. Claims for Unfair and Deceptive Trade Practices under Chapter 75 of the North Carolina General Statues and for Unfair Competition under North Carolina Common Law**

"To recover under the UTPA, a plaintiff must prove (1) that the defendant engaged in conduct that was in or affecting commerce, (2) that the conduct was unfair or 'had the capacity or tendency to deceive', and (3) 'that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.'" *Gilbane Bldg. Co. v. Federal Reserve Bank of Richmond, Charlotte Branch,* 80 F.3d 895, 902 (4th Cir. 1996)(quoting *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 343 S.E.2d 174 (1986). "Acts are deceptive when they possess the tendency or capacity to mislead, or create the likelihood of deception." *Id*. at 903 (quoting *Chastain v. Wall*, N.C. App. 350, 337 S.E.2d 150,154 (1985), disc. rev. denied, 316 N.C. 375, 342 S.E.2d 891(1986). Here, the Plaintiff successfully pleads a cause of action under the UTPA by claiming that the Defendant knowingly made misrepresentations to its customers regarding Plaintiff's product and business, which caused the Plaintiff to lose sales and goodwill. While the Defendant asserts that only business competitors can sustain a claim under the UTPA, under North Carolina law, "one business is permitted to assert an UTPA claim against another business only when the businesses are competitors (or potential competitors) *or are engaged in commercial dealings with each other*." *Food Lion, Inc. v. Capital Cities/ ABC, Inc.*, 194 F.3d 505, 521 (4th Cir. 1999) (emphasis added). In the instant case, the Plaintiff alleges that the parties were engaged in buying and selling diabetic supplies, and therefore involved in commercial dealings with each other.

    Plaintiff's claim for unfair competition is based on the same misrepresentations. The North Carolina Supreme Court has pointed out that "it is often very difficult to draw a distinction between fair and unfair competition." *Carolina Aniline & Extract Co. v. Ray*, 20 S.E.2d 59, 61 (1942). However, "the test is simple… Has the plaintiff's legitimate business been damaged through acts of the defendants which a court in equity would consider unfair?" *Id*. at 61. Here, the Plaintiff has alleged that the

Defendant made knowing misrepresentations that Plaintiff's product was in short supply because the manufacturer was discontinuing it in the US market. This allegation, that Defendant deliberately misled customers as to the availability of the Plaintiff's product, is plausible enough to sustain a claim for unfair competition, and is sufficient to meet Plaintiff's burden to avoid dismissal.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's motion is GRANTED as to Plaintiff's claim for libel per se, and this claim is hereby DISMISSED with prejudice. As to all other claims, this motion is DENIED.

Signed: January 11, 2010

Graham C. Mullen
United States District Judge